LOUIS C. DRAPEAU, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.
HENRY MORRISSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 81256, 83412. Promulgated October 26, 1937.

*Ralph W. Smith, Esq.*, for the petitioners.
*Arthur H. Fast, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The petitioners were, in 1932 and 1933, inheritance tax appraisers of the State of California, Drapeau for Ventura County and Morrissey for Los Angeles County. The Commissioner determined that the entire compensation they received for their services in that capacity was subject to tax, and by including it in their gross income arrived at deficiencies of $27.24 and $29.13 for Drapeau, and $1,029.13 and $527.16 for Morrissey. They assail these determinations on the ground that such tax would be an unconstitutional interference by the Federal Government with the performance by the state of its essential governmental functions.

No facts are in dispute, and the evidence consists largely of a description by the state controller and by inheritance tax appraisers of the statutory system [1] governing petitioners' functions and its actual operation.

Petitioners were appointed by the state controller. They took the statutory oath prescribed for officers, and held their offices for indefinite terms. Within their respective counties they were assigned to appraise particular estates, the appraisal being subject to approval of the court. Both were lawyers, and they were permitted to engage in practice if it did not interfere with their official duties. Morrissey in fact gave up all other practice during the years in question, and devoted himself entirely to his work as a state appraiser in Los Angeles. Drapeau in fact devoted more time to the practice of law than to state appraisal work.

The compensation of such appraisers is a combination of an amount fixed by the controller to be paid by the state, and a fee, in accordance with a statutory schedule, to be paid by the estate, the amount

[1] Political Code, sec. 445 ; Probate Code, sec. 605, sec. 609, amended Stats. 1933, ch. 283 ; Code of Civil Procedure, sec. 1723 ; General Laws, 1931, Act 8443, secs. 14, 16, 17.

of which is in practice subject to the controller's approval. In 1932 Morrissey received $14,090.32 compensation, of which $3,200 was annual compensation from the state, paid by the controller out of inheritance tax receipts, and $10,890.32 was the sum of fees paid out of the estates appraised. In 1933 he received $9,056.35, made up of $3,200 as compensation from the state and $5,856.35 as fees from estates. Drapeau's 1932 total income was reported as derived, $5,545.38 from his law practice and $1,305.66 from his services as appraiser. It is stipulated by counsel that this $1,305.66 was received, 15 percent, or $195.85, from the state and the rest, $1,109.81 from estates appraised. His 1933 reported income was $5,802 from his law practice and $1,141.28 from his services as an appraiser, of which it is stipulated that 15 percent, $171.19, came from the state and $970.09 from estates appraised. The record as to Drapeau is not satisfactory. He did not appear, and the foregoing stipulated facts are all that are in evidence. The state controller testified that generally appraisers in Los Angeles County were paid state compensation of $3,200 a year, and those in San Francisco and other counties $3,000; but there is no testimony whatever as to the method of arriving at Drapeau's compensation.

In our opinion, these inheritance tax appraisers are officers of the State of California, performing an essential governmental function. They are a necessary part of the revenue system provided by statute; appointed with an unlimited tenure and not for a specific job; taking a required oath of office; paid by the state; and supported by all the necessary powers of the state in the performance of their duties. If their entire function were to determine the value of taxable inheritances for the purpose of assessing the tax, and they received for this a fixed salary from the state, their immunity from Federal tax as to such salary would be clear. We think it applies no less to that amount paid annually by the state as compensation—the $3,200 received each year by Morrissey and the $195.85 and $171.19 received by Drapeau. These amounts, the controller testified, were fixed expressly with regard to the need for competent and reliable uniform service to the state, and the theory of the constitutional immunity as a necessary protection of the state's bargaining power is applicable.

But the courts have differed as to the compensation derived from others than the state itself, and, as to the amounts received by these petitioners as fees paid by the estates, it can not be said that the Federal tax operates as a burden upon the state. The appraisal is not entirely an incident of tax collection, but is also an incident of probate. It is apparently largely in this aspect that it is to be paid for by the estate. Although it is made under the aegis of the state

controller and the probate court, this is not a ground for Federal tax immunity. See *Miller* v. *McCaughn*, 27 Fed. (2d) 128; *McLoughlin* v. *Commissioner*, 89 Fed. (2d) 699; *Harman* v. *Helvering*, 90 Fed. (2d) 622; *Saxe* v. *Anderson*, 19 Fed. Supp. 21. Cf. *Therrell* v. *Commissioner*, 88 Fed. (2d) 869; *Tunnicliffe* v. *Commissioner*, 88 Fed. (2d) 873. The amounts received by both petitioners as fees paid by the estates are properly within their taxable gross income.

*Judgment will be entered under Rule 50.*